IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ARKALON GRAZING ASSOCIATION,**  )
**on behalf of itself and all others** )
**similarly situated,** )
) 
) 
**Plaintiffs,** )
) 
**v.** )
) Case No. 09-1394-CM
) 
**CHESAPEAKE OPERATING, INC.** )
**(and its predecessors and affiliates),** )
) 
) 
**Defendant.** )
_____ )

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Chesapeake Operating, Inc.'s motion to decertify the class (Doc. 241). Plaintiff Arkalon Grazing Association brings suit on behalf of itself and all others similarly situated against defendant for underpayment or nonpayment of royalties on natural gas and/or constituents of the gas stream produced from wells in Kansas. Plaintiff claims that it, and the other class members, are the beneficiaries of an implied covenant obligating defendant to place the gas, and all of its constituent parts, in marketable condition. These claims are discussed in more detail in the court's original certification order (Doc. 95.)

On March 31, 2011, the court issued an order certifying a class action (Doc. 95). Defendant then sought permission from the Tenth Circuit to appeal the court's certification order under Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5(a). The Tenth Circuit asked the parties to address the impact of *Wal-Mart Stores, Inc. v. Dukes*[1] on the petition before it. On July

---

[1] 1321 S. Ct. 2541 (2011).

-1-

11, 2011, the Tenth Circuit issued an order denying the petition to appeal, stating that it had "carefully considered the legal arguments made, as well as all of the materials submitted."[2]  (Doc. 262-3 at 2.) On July 9, 2013, the Tenth Circuit issued orders in two oil and gas royalty cases very similar to this one, vacating and remanding the district courts' orders granting class certification.  *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213 (10th Cir. 2013); *Chieftain Royalty Co. v. XTO Energy, Inc.*, 528 F. App'x 938 (10th Cir. 2013).  On November 20, 2013, defendant filed the instant motion, arguing that the recent decisions in *Dukes*, *Comcast*, *Roderick*, and *Chieftain* mandate decertification of the class.[3]  For the reasons below, the court grants defendant's motion.[4]

Under Rule 23(c)(1)(C), the district court can alter or amend its class certification order at any time before final judgment is entered.  *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201–02 (10th Cir. 2010) (noting that the court "possesses the discretion under Rule 23(c)(1)(C) to amend its certification order to reflect its findings or decertify the class altogether prior to final judgment") (citations omitted).  Although some courts have applied a standard more similar to one used when deciding a motion for reconsideration, *see, e.g.*, *Schell v. OXY USA Inc.*, No. 07-1258-JTM, 2013 WL 4857686, at *3 (D. Kan. Sept. 11, 2013); *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 600 n.2, 615 (D. Kan. 2012), the court finds that Rule 23(c)(1)(C) is most on point.  But the court does agree that "the defendant must logically provide some reason for the court to change its

---

[2]  Under Rule 23(f), federal appellate courts have broad discretion to allow interlocutory appeals of class certification orders.  *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009).  Courts of appeals may "grant or deny permission to appeal a class certification order based on any consideration they find persuasive."  *Id.* (quotation and quotation marks omitted).  The Tenth Circuit has noted that granting "a petition for interlocutory review constitutes the exception rather than the rule."  *Id.* (quotation and quotation marks omitted).

[3]  *Dukes*, 131 S. Ct. 2541; *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *Roderick*, 725 F.3d 1213; *Chieftain*, 528 F. App'x 938.

[4]  Plaintiffs' response states that the class withdraws its legal theory of fraudulent concealment.

-2-

conclusion." *Schell*, 2013 WL 4857686, at *3. Yet, it remains the plaintiff's burden to prove that the requirements of Rule 23 are met. *See Roderick*, 725 F.3d at 1218.

In arguing that decertification is proper, defendant first argues that plaintiff cannot satisfy the commonality requirement under *Dukes*. In *Dukes*, the court found that class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct. at 2551. The commonality consideration looks at whether common answers will drive the resolution of the litigation. *Id.* (quotation omitted). Defendant contends that the question of whether defendant breached an implied covenant owed to all class members is not a common question because the court must (1) examine the language of each individual lease to determine if the covenant applies, and (2) employ a "well-by-well analysis" to determine at what point a product is marketable.

In *Roderick*, the Tenth Circuit vacated and remanded the court's certification order, finding that the district court erred in putting the burden on the defendant to "'point to any lease provision unambiguously negating . . . the existence of any implied duty of marketability.'" *Id*. at 1218 (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 281 F.R.D. 477, 483 (D. Kan. 2012)). In its decision, the court emphasized that it is the plaintiff's duty to show that the Rule 23 requirements are met. *Id.* at 1217–18.

In addition, the Tenth Circuit in *Roderick* noted that, while the district court considered many of the defendant's arguments regarding differences in lease language, there were still about 430 leases that the court had not yet examined. *Id.* at 1219. The *Roderick* court opined that "the district court could decide that no lease type negates the [implied duty of marketability]," but there was no way to do this until all of the leases had been considered. *Id.* The court came to a similar conclusion in

*Chieftain*, pointing out that the court had not yet reviewed approximately 13,568 leases. 528 F. App'x at 942. The *Roderick* court suggested that the plaintiff "could, for example, create a chart classifying lease types" for the court to utilize. 725 F.3d at 1219. And in both cases, the court directed the district court on remand to consider how the marketability question affects commonality. *Roderick*, 725 F.3d at 1219; *Chieftain*, 528 F. App'x at 943.

Plaintiff argues that this court has already reviewed a lease chart like the one referred to by the Tenth Circuit, pointing to the exhibit defendant attached to its response to plaintiff's motion for class certification. (Docs. 59-3, 59-5.) Plaintiff argues that all but 12 of the 1,044 leases at issue contain the implied duty of marketability. (*See* Doc. 259 at 1.) This is because those 12 leases expressly negate the duty and allow the defendant to deduct all of the gathering, compression, dehydration, treating, and processing service costs at issue. Plaintiff acknowledges that those leases contain express deduction language, but it argues that defendant improperly deducts a Conservation Fee from the royalty, so defendant is still liable on those leases for the Conservation Fee. Plaintiff alleges that the other 1,032 leases contain the implied duty of marketability and that defendant is liable under these leases for all of the other allegedly deducted costs.

Defendant disagrees, pointing to the lease chart as evidence that there are numerous variations in lease language that prevent a finding of commonality. Defendant argues that there are more than fifty lease forms at issue and that each individual lease must be considered to determine whether the implied duty of marketability applies—an exercise that defendant argues defeats the commonality requirement. And defendant argues that liability under the 12 express deduction leases themselves "cannot be determined by a finding of liability under the named plaintiff's lease." (Doc. 267 at 7.)

Plaintiff is correct that the court has already considered all of the leases and examined the different lease language and concerns regarding marketability. In doing so, the court relied on the

-4-

lease chart submitted by defendant as described above. (Docs. 59-3, 59-5.) Unlike the district courts in *Roderick* and *Chieftain*, the court here considered the comprehensive lease chart and the specific lease language when it granted the motion for class certification.

In considering the instant motion, the court again reviewed the lease chart after considering the *Dukes*, *Comcast*, *Roderick*, and *Chieftain* cases relied upon by defendant. After much consideration, the court has determined that decertification is proper. Although the above-cited cases do not mandate that the court decertify the class, the court finds the cases instructive when applied to the facts at hand. And while the court does not find that *Dukes* created a heightened or changed standard, the court has reanalyzed the facts of this case with the guidance of *Dukes* and its holdings regarding commonality, as well as the *Roderick* and *Chieftain* cases. The court is not convinced that plaintiff met its burden to show that the common contentions it raises can be resolved in a single stroke. *Dukes*, 131 S. Ct. at 2551. Instead, the court—after considering again the lease language variations and the question of marketability as directed by the Tenth Circuit in *Roderick*, 725 F.3d at 1219, and *Chieftain*, 528 F. App'x at 943—finds that individual inquiries into the language of each lease and the marketability of gas at each well preclude a finding of commonality.

As to the lease language issue, plaintiff has not shown that the court could determine on a class-wide basis that the implied duty of marketability exists in each lease without analyzing the language of each individual lease. Plaintiff admits that 12 leases expressly abrogate the implied duty of marketability, yet plaintiff contends that the court can still decide this case on a class-wide basis. Further, plaintiff argues that all of the remaining 1,032 leases contain the implied duty of marketability, but plaintiff has not met its burden to show that commonality is met notwithstanding the different language of the more than fifty varying lease forms.

As to the marketability question, plaintiff relies on an expert report attached to its partial motion for summary judgment on marketable condition (Doc. 260) in alleging that none of the gas is marketable at the well. (Doc. 262 at 12 (citing Doc. 261-2 at 4, 8).) Defendant's expert holds a contrary position. (*See* Doc. 59-13 at 4–5.) Plaintiff acknowledges that *Roderick* recognized gas "may be marketable at the well," citing the Kansas Supreme Court's decision in *Sternberger v. Marathon Oil Co.*, 894 P.2d 788, 800 (1995). 725 F.3d at 1217. And plaintiff concedes that three factors raised by defendant impact the marketability determination, including (1) the pressure of the gas as it is produced, (2) the chemical composition of the gas, and (3) the heating value of the gas. (Doc. 262 at 12.) With little explanation, however, plaintiff argues that these three factors also show that all of the gas at issue in this case is not in marketable condition. As defendant points out, plaintiff has not met its burden to show that "the amount, type, form, and expense associated with treatment" required to render the gas marketable does not vary from well to well across the more than 400 wells at issue in this case. (Doc. 267 at 8.) The court is not convinced that it can resolve this case on a class-wide basis on the issue of marketability without examining the gas quality of each individual well. Plaintiff has not met its burden to show that commonality is met.

Further, the court admittedly relied on a common payment methodology in finding that predominance was satisfied when it certified the class. (S*ee, e.g.*, Doc. 95 at 7 ("In this case, the significant issues relate to defendant's payment and non-payment of royalties and the methods used in calculating the royalties.").) But *Roderick* made it clear that this is impermissible, holding that "[p]redominance is not established simply by virtue of a uniform payment methodology." 725 F.3d at 1220. The same issues that prevent a finding of commonality—variations in lease language and individual marketability issues—convince the court that plaintiff has not satisfied its burden as to the

-6-

"'far more demanding'" predominance factor.  *See id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

Finally, as to damages, "[w]hile the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification . . . it is nonetheless a factor [the court] must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues."  *Roderick*, 725 F.3d at 1220 (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)) (quotation marks omitted).  Here, the court finds that determining damages will require review of the applicable lease language and gas quality for each royalty owner.  Further, these individual inquiries outweigh and "overwhelm questions common to the class."  *See Comcast Corp.*, 133 S. Ct. at 1433; *see also Roderick*, 725 F.3d at 1220 (citing *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)).

In conclusion, the court now has the benefit of additional guidance from the Supreme Court and Tenth Circuit in the cases cited by defendant and finds that decertification is proper based on the specific facts of this case.  For these reasons, defendant's motion to decertify the class is granted.

**IT IS THEREFORE ORDERED** that Defendant Chesapeake Operating Inc.'s Motion to Decertify Class (Doc. 241) is granted.

**IT IS FURTHER ORDERED** that the two pending partial summary judgment motions (Docs. 257, 260) are denied without prejudice, as these motions were made on behalf of the now decertified class.  The most current scheduling order (Doc. 276) sets a dispositive motion deadline of December 19, 2014, and the parties are free to refile summary judgment motions on or before this deadline.

Dated this 7th day of July, 2014, at Kansas City, Kansas.

s/ Carlos Murguia

**CARLOS MURGUIA**
**United States District Judge**